## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

JOHN DOE,

     Plaintiff,

v.

ROCKINGHAM COUNTY SCHOOL
BOARD, d/b/a RUSSEL COUNTY PUBLIC
SCHOOLS, PHIL JUDD, Individually and as
an Agent of ROCKINGHAM COUNTY
SCHOOL BOARD, SANDY KING,
Individually and as an Agent of
ROCKINGHAM COUNTY SCHOOL
BOARD,WESLEY DUNLAP, TIMELESS
TOYS, LLC, and JOHN ROES 1-10.

     Defendants.

Civil Action No.:   5:21cv00051

## COMPLAINT AND JURY DEMAND

Plaintiff John Doe, by and through his counsel Fitzgerald Litigation and Freiwald Law, P.C., brings this action against Defendants Rockingham County School Board d/b/a Rockingham County Public Schools, Phil Judd, Individually, and as an Agent of Rockingham County School Board, Sandy King, Individually, and as an Agent of Rockingham County School Board, Wesley Dunlap, Timeless Toys, LLC, and John Roes 1-10 and alleges as follows:

### I.    INTRODUCTION

1.    This is a case brought by John Doe, who at all relevant times, was a student enrolled at Turner Ashby High School in the Rockingham County School District.  Plaintiff Doe was groomed by his high school choir teacher, Defendant Wesley Dunlap, and sexually assaulted on multiple occasions both on and off school grounds.

2. Prior to Plaintiff being groomed and sexually assaulted by Defendant Dunlap, Defendant Rockingham County School Board (hereinafter "School Board") had inadequate training, policies and procedures to prevent and recognize inappropriate conduct by teachers toward students. In the four years prior to Plaintiff being assaulted, at least three prior teachers had inappropriate contact with students at Turner Ashby. Despite this knowledge, upon information and belief, Defendant School Board failed to offer adequate training or appropriate policies and procedures to prevent further harm to students by teachers and to remedy the effects once harm was discovered.

3. Defendant School Board had actual knowledge of Defendant Dunlap's sexual assaults and inappropriate conduct toward Plaintiff, yet failed to investigate or remedy the harmful effects, which resulted in a hostile educational environment for Plaintiff.

4. Defendant Dunlap was criminally charged and pleaded guilty to two felonies related to his conduct toward Plaintiff and is currently incarcerated.

5. Defendant Dunlap, in addition to his employment with Defendant School Board, was also co-owner of Timeless Toys, LLC, a vintage toy store in Harrisonburg, Virginia.

6. Defendant Dunlap sexually assaulted Plaintiff at Timeless Toys, LLC and used the Timeless Toys Instagram account to solicit and receive sexual images of Plaintiff and sent Plaintiff nude images of himself to Plaintiff, who was, during the relevant time, a minor under age 18.

7. Defendants' actions have left Mr. Doe with severe psychological injuries that have significantly impacted his well-being and safety. Defendants' conduct has violated Plaintiff's Constitutional, federal, and civil rights, and caused him loss of educational benefits, physical and emotional injury, and other serious, permanent damages.

## II.    JURISDICTION

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims under Title IX and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the U.S. Constitution.

9.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

10.      Venue in this federal district is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this district.

## III.    PARTIES

11.      Plaintiff John Doe is an adult and a resident of Rockingham County, Virginia.[1] Plaintiff John Doe's identity and address are not disclosed here because of his desire to keep confidential his identity and address because he was a victim of nonconsensual sexual contact and assault described in this Complaint.  Plaintiff fears embarrassment and further psychological damage if his identity as a victim of sexual assault were to become publicly known.  Plaintiff may be contacted by and through his counsel.

12.      Defendant Rockingham County School Board, d/b/a Rockingham County School District (hereinafter "School Board") is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a). Defendant geographically lies within the Western District of Virginia.  Turner Ashby High School ("Turner Ashby") is a high school within the District and controlled and operated by Rockingham County School Board.  Defendant School Board has the authority to sue or be sued under Va. Code Ann. § 22.1-79.

---

[1] John Doe will be filing a Motion to Proceed Under Pseudonym to protect Mr. Doe's identity and privacy as a childhood sexual assault and harassment survivor.

13.     The Commonwealth of Virginia has delegated to Defendant School Board the duties to "operate and maintain the public schools in the division," "[s]ee that the school laws are properly explained, enforced and observed," and "take care that the [public schools in the school division] are conducted according to law." Va. Code. Ann. § 22.1-79.

14.     Defendant Phil Judd is an adult individual who, at all relevant times, was employed by and in the course and scope of his employment with Defendant School Board as the Principal of Turner Ashby High School. Defendant School Board is directly and vicariously liable for the conduct of Defendant Judd. Defendant Judd's place of business is located at 800 North Main Street, Bridgewater, Virginia 22812.

15.     The Virginia Board of Education's Regulations Establishing Standards for Accrediting Public Schools in Virginia state, "[t]he principal is recognized as the instructional leader of the school and is responsible for the effective school management that promotes positive student achievement, a safe and secure environment in which to teach and learn, and efficient use of resources." 8 VA 20-131-210 (A). A principal should have the "maximum authority available under law in all matters affecting the school including, but not limited to, instruction and personnel in a manner that allows the principal to be held accountable in a fair and consistent manner for matters under his direct control." *Id.*

16.     Defendant Sandy King is an adult individual who, at all relevant times, was employed by and in the course and scope of her employment with Defendant School Board as a guidance counselor at Turner Ashby High School. Defendant School Board is directly and vicariously liable for the conduct of Defendant King. Defendant King's place of business is located at 800 North Main Street, Bridgewater, Virginia 22812.

17.     Defendant Wesley Dunlap is an adult individual who, at all relevant times, resided

at 3398 Pleasant Valley Road, Mount Crawford, Virginia 22841. Presently, he is incarcerated with the Virginia Department of Corrections. At all relevant times, he was a 37-year-old teacher employed by the Rockingham County School Board as the choir teacher at Turner Ashby High School. Upon information and belief, Defendant Dunlap was hired by Rockingham County School Board in 2014 and co-owned a toy store, Timeless Toys, LLC. Defendants School Board and Timeless Toys, LLC are directly and vicariously liable for the conduct of Defendant Dunlap.

18.     Defendant Timeless Toys, LLC is a toy store located at 121 Carpenter Lane, Harrisonburg, Virginia 22801. Defendant Timeless Toys, LLC is co-owned by Defendant Dunlap and Josh Helmuth and was opened in 2011.

19.     Defendants John Roes 1-10 are presently unidentified administrators, officials, employees, owners, or agents otherwise affiliated with Defendant School Board and/or Timeless Toys, LLC who violated Plaintiff's Constitutional rights, violated other state and federal laws, or breached duties and caused injuries to Plaintiff. Defendants School Board and Timeless Toys, LLC are directly and vicariously liable for the conduct of John Roes 1-10.

1.  **FACTS**

A. **The Grooming and Sexual Assaults of Plaintiff John Doe**

20.     Plaintiff grew up in a single-parent home with his mother.

21.     Plaintiff never had a father figure in his life and had learning difficulties that required an Individualized Education Plan ("IEP").

22.     Despite these adversities, Plaintiff did well in school and had an interest in choir and theater.

23.     In approximately 2014, Defendant Dunlap was hired to teach at Turner Ashby by Defendant School Board.

24.     Plaintiff entered Turner Ashby High School in the fall of 2016 and he became heavily involved in the school's choir and theater programs.

25.     Defendant Wesley Dunlap was the choir teacher and he, along with Ms. Cecille Deason, were in charge of the school plays.

26.     Unbeknownst to Plaintiff, Defendant Dunlap had a history of grooming male students.

27.     It was common knowledge within Turner Ashby High School that Defendant Dunlap was called "Daddy Dunlap," "Dad Dunlap," "Dad," or "Wes" by students.

28.     It was common practice and, upon information and belief, within the actual knowledge of Principal Judd and Guidance Counselor King, for students to call teachers by nicknames instead of Mr. or Ms. last name.

29.     It was also common practice at Turner Ashby High School for students to hug their teachers.

30.     For example, on a daily basis, female students would run up to Defendant Principal Judd and hug him in the hallways.

31.     A common practice of hugging teachers in the hallways and classrooms, which was accepted by Defendants School Board, Judd, and King, represented a common practice of violating appropriate and safe boundaries between teachers and students.

32.     During the 2018-2019 school year, Defendant Dunlap had provided all of his students with a screen shot containing the class roster.  However, also printed on the page with the class roster was the apps Defendant Dunlap had open, one of which was Grindr.

33.     Grindr is a location-based online dating and hook-up app for people who identify as gay, bisexual, transgender, or queer.

34.    This was reported by a student to Defendant King, who, upon information and belief, reported it to Defendant Principal Judd.

35.    In high school, Plaintiff had never been in a romantic relationship and his friend group consisted of students who were in the choir or school plays.

36.    During Plaintiff's junior year at Turner Ashby, Defendant Dunlap encouraged Plaintiff to come to him with any issues that Plaintiff was going through.

37.    Defendant Dunlap knew that Plaintiff did not have a father figure and had difficulty with confidence, feeling loved, and feeling important.

38.    Plaintiff began relying on Defendant Dunlap as a friend and father-figure and would discuss family issues, money difficulties at home, and other things going on in his life with him.

39.    Defendant Dunlap groomed Plaintiff as he gave Plaintiff special attention, listened to him, spent time with him, and made him feel loved.

40.    Defendant Dunlap isolated Plaintiff and caused Plaintiff to lose most of his friends and distrust his family.

41.    Plaintiff would regularly be in Defendant Dunlap's office with the door closed during the course of the school day and both before and after school.

42.    All of these things were clear, obvious signs of grooming that were or should have been recognized by Defendant School Board and its employees, administration, teachers, and staff, including but not limited to Defendants Judd and King.

43.    Defendant Dunlap gave Plaintiff extra attention during school play rehearsals and complimented him on his singing abilities in choir.

44.    On or about April 2, 2019, Plaintiff, along with other students from Turner Ashby's theater department, traveled to Washington D.C. to see a show.

45.     Defendant Dunlap was on the trip with the students along with Ms. Deason.

46.     Prior to getting back into the school vans to drive home to Virginia, Plaintiff was using the urinal in the bathroom and Defendant Dunlap walked by Plaintiff and squeezed Plaintiff's shoulder.

47.     Following this inappropriate interaction by Defendant Dunlap, Plaintiff and Defendant Dunlap were frequently communicating on the school-issued Remind App.

48.     The Remind App was an app used by Turner Ashby teachers and students to communicate with each other that was, upon information and belief, monitored by Defendant School Board or its agents.

49.     During this period of time, Plaintiff was struggling with his sexuality and on April 22, 2019 Plaintiff sent Defendant Dunlap a long message in the Remind App to confide in him about his confusion with his sexuality.

50.     Defendant Dunlap told Plaintiff that the message was too long for the Remind App and gave Plaintiff his personal email account for Plaintiff to send the message there instead.

51.     Plaintiff emailed Defendant Dunlap on April 22 about the confusion he was having with his sexuality and told Defendant that he may be bisexual or gay.  Defendant Dunlap told Plaintiff he wanted to talk to him the following day at school.

52.     On April 23, 2019, Plaintiff went to the choir room to talk to Defendant Dunlap about his feelings of being bisexual and sought guidance about not knowing what to do.

53.     Plaintiff felt that there was no one else he could confide in about his sexuality and made the decision to tell Defendant Dunlap since he was like a father-figure to him and, due to Defendant Dunlap's grooming, Plaintiff had become isolated from his friends and family.

54.     Plaintiff was crying while explaining to Defendant Dunlap his feelings about his

sexuality and Defendant Dunlap told Plaintiff that he was also bisexual and liked men as well.

55.     Plaintiff continued crying and Defendant Dunlap asked Plaintiff if he wanted a hug and Plaintiff said yes, but Defendant Dunlap said he did not want anyone to see him hug a student so he told Plaintiff to follow him into the music library, which had no windows.

56.     Plaintiff did as he was told and followed Defendant Dunlap into the music library.

57.     Once in the music library, Defendant Dunlap hugged Plaintiff and then kissed Plaintiff.

58.     This was Plaintiff's first time he had ever been kissed and left him feeling ashamed, confused, and traumatized.

59.     Throughout the rest of April and early May, Defendant Dunlap had Plaintiff meet him in the music library at school where Defendant would kiss Plaintiff.

60.     Defendant Dunlap also touched Plaintiff's penis over his clothes in the music library.

61.     On or about May 18, 2019, Defendant Dunlap was messaging Plaintiff on the Instagram App.

62.     Defendant Dunlap was using the official Timeless Toys Instagram account to communicate with Plaintiff.

63.     Defendant Dunlap sent Plaintiff a photograph of his penis and asked for a photograph of Plaintiff's penis from him.

64.     Plaintiff sent a photograph of his penis to Defendant Dunlap on the Timeless Toys Instagram messenger.

65.     Plaintiff was seventeen (17) at the time and not of legal age to send or receive nude images from an adult.

66.     In mid-May 2019, Defendant Dunlap asked Plaintiff to meet him on a Sunday at Timeless Toys in the Heritage Market in Harrisonburg, Virginia.

67.     The toy store was closed on Sundays, but Heritage Market was open.

68.     Defendant Dunlap led Plaintiff into the store through the backdoor to avoid passing people in Heritage Market.

69.     Defendant Dunlap began kissing Plaintiff in the Timeless Toys store.

70.     Defendant Dunlap told Plaintiff to take off his shirt and Defendant took off his own shirt.  Defendant Dunlap began touching Plaintiff's penis and told Plaintiff to touch Defendant's penis.

71.     Defendant Dunlap had Plaintiff perform oral sex on Defendant and Defendant performed oral sex on Plaintiff.

72.     Defendant Dunlap told Plaintiff that he wanted to have sexual intercourse with Plaintiff, but that they should wait until Plaintiff turned eighteen (18) to do so.

73.     On or about July 18, 2019, Plaintiff and Defendant Dunlap were messaging on Instagram through the Timeless Toys account.

74.     Plaintiff drove to Defendant Dunlap's house and sent a picture to Defendant to show he was outside.

75.     Defendant Dunlap got into Plaintiff's car and instructed him to drive to a nearby parking lot and park behind a trailer so no one could see.

76.     Plaintiff did as he was told by Defendant Dunlap.

77.     Once parked, Defendant Dunlap kissed Plaintiff and then performed oral sex on Plaintiff.

78.     Defendant Dunlap told Plaintiff to perform oral sex on Defendant.

79.     Then, Defendant Dunlap anally raped Plaintiff in Plaintiff's car.

80.     Plaintiff was seventeen (17) years old at this time.

81.     After Defendant Dunlap raped Plaintiff, Defendant Dunlap became more distant toward Plaintiff.

82.     Defendant Dunlap had groomed Plaintiff into becoming isolated and Plaintiff did not have anyone to rely on or confide in except Defendant Dunlap.

83.     Plaintiff was ashamed of the way he was groomed, manipulated, and sexually assaulted by Defendant Dunlap, which caused Plaintiff to go into a deep depression.

84.     In the fall of 2019, Plaintiff's senior year, Defendant Dunlap was making it obvious to other students that he was avoiding Plaintiff.

85.     With having no one to turn to and feeling overwhelmed about what Defendant had done to him and forced him to do, Plaintiff attempted suicide just prior to Thanksgiving in November 2019.

86.     Plaintiff was admitted to the hospital following his suicide attempt and was waiting to be transferred to the psychiatric ward of the hospital.

87.     At the hospital, Plaintiff was only allowed limited visitors, which included his immediate family and very close friends.

88.     Defendant Dunlap showed up to the hospital and met with Plaintiff alone in his room.

89.     During this meeting Defendant Dunlap threatened Plaintiff and told him that he better not tell anyone about what happened between the two of them.

90.     Defendant Dunlap made Plaintiff promise not to tell anyone before Defendant left.

91.      Plaintiff did as he was told and did not tell anyone about Defendant Dunlap

sexually assaulting and abusing him.

92.     In late November 2019, Plaintiff returned to Turner Ashby High School.

93.     Upon information and belief, upon Plaintiff's return to school, Plaintiff and Defendant Dunlap were pulled into a meeting at Turner Ashby with Defendant Principal Judd and Defendant King.

94.     Defendant Judd and Defendant King told Defendant Dunlap and Plaintiff, "if there's something or a relationship going on between you two, you better knock it off."

95.     The statements made by Defendants Judd and King in this meeting constitute actual knowledge within the meaning of Title IX.

96.     Defendants Judd and King were individuals with authority to take corrective action.

97.     Despite their actual knowledge of Defendant Dunlap's sexual harassment and assault of Plaintiff, Defendants Judd and King never interviewed Plaintiff or inquired into what had been and continued happening between Defendant Dunlap and Plaintiff.

98.     Defendants referring to Plaintiff's sexual assault by Defendant Dunlap as a "relationship" was outrageous, victim-blaming behavior and in conscious, reckless disregard of the obvious unequal power between a teacher and student.

99.     Defendants Judd and King never offered Plaintiff any kind of support or counseling or informed him of his rights under Title IX.

100.    Defendants Judd and King never identified the Title IX Coordinator to Plaintiff or his mother.

101.    Upon information and belief, Defendant School Board did not have a designated Title IX Coordinator.

102.    Defendants Judd and King never told Plaintiff's mother about the meeting between

Plaintiff and Defendant Dunlap.

103.   Defendants' response to its actual knowledge of an inappropriate conduct between Defendant Dunlap and Plaintiff was deliberately indifferent and clearly unreasonable in light of the known circumstances.

104.   Upon information and belief, no investigation was done into whether Defendant Dunlap had acted inappropriately with Plaintiff.

105.   Following this meeting, Defendant Dunlap asked Plaintiff to meet him in the choir room.

106.   Defendant Dunlap began crying to Plaintiff and saying that he was afraid to lose his job.

107.   Defendant again asked Plaintiff not to tell anyone about what he had done to Plaintiff and told Plaintiff that "we need to completely stop talking to each other because the school is catching on."

108.   Plaintiff was devastated because Defendant Dunlap was the only person he felt he could go to.

109.   In the following weeks and months, Plaintiff severely struggled psychologically and emotionally.

110.   Despite Defendant School Board and Defendants Principal Judd and Guidance Counselor King's actual knowledge of, at the very least, inappropriate conduct between Defendant Dunlap and Plaintiff, Defendants took no steps to remediate the effects of Plaintiff's hostile educational environment.

111.   Specifically, Plaintiff had three classes with Defendant Dunlap during the fall and spring semester of his senior year.

112.    Defendants School Board, Principal Judd, and Guidance Counselor King did not offer Plaintiff a class schedule change so that he did not have to take half his classes with Defendant Dunlap.

113.    Defendant King also met with Plaintiff multiple times each week and Plaintiff explained to her that he was struggling psychologically, emotionally, and academically.

114.    Defendant King told Plaintiff that he was unable to speak with Defendant Dunlap about any of the issues he was having and, instead, should go to Defendant King.

115.    Plaintiff's mother came to school and met with Defendants Judd and King because she was concerned about her son's mental and physical well-being.

116.    Plaintiff's mother also called Defendants Judd and King multiple times voicing her concerns about Plaintiff's well-being.

117.    Defendant King warned Plaintiff's mother that if Plaintiff showed signs of suicidal ideation, she would call the police and have him taken back to the psychiatric ward.

118.    This threat by Defendant King increased Plaintiff's anxiety in that he was afraid to share how he was really feeling and tried to pretend that he was not in crisis so that he did not get arrested in front of his classmates and returned to the psychiatric ward.

119.    Plaintiff was especially afraid of returning to the psychiatric ward because when he was admitted there after his suicide attempt, he was traumatized by group sessions where other patients spoke in detail about their trauma and self-harming behaviors.

120.    From December 2019 through March 2020, Plaintiff suffered from severe anxiety and memory issues on a daily basis.

121.    At one point during the Spring 2020 semester, Plaintiff was found by Defendant Dunlap laying on the floor in the fetal position in the choir hallway at Turner Ashby.

122.     As Plaintiff was still involved in the school plays, Plaintiff had to see Defendant Dunlap on a daily basis and work with him.

123.     Ms. Deason recognized that Plaintiff was dazed and struggling psychologically at theater practice and, upon information and belief, communicated this to Defendants Judd and King. However, no action was taken by the School Defendants to investigate or remediate the hostile educational environment.

124.     At the end of March 2020, the COVID pandemic began and school was moved to a virtual format.

125.     Plaintiff graduated from Turner Ashby High School on June 6, 2020.

126.     Mere hours after Plaintiff graduated from Turner Ashby High School, he received a message from Defendant Dunlap telling Plaintiff that Defendant had asked another student from a neighboring high school to have a threesome with Plaintiff and Defendant.

127.     Defendant Dunlap then asked Plaintiff to participate in the threesome with Defendant and the other student.

128.     Following this message from Defendant Dunlap, Plaintiff began contemplating suicide again.

129.     Plaintiff enrolled in psychological therapy in approximately June 2020.  He confided in his therapist and disclosed that he had been repeatedly sexually assaulted by Defendant Dunlap.

130.     Plaintiff's therapist reported Plaintiff's disclosure to the local Child Abuse Hotline and an investigation was initiated by the Rockingham County Sheriff's Office.

131.     In the summer of 2020, Defendant Dunlap resigned from his job at Turner Ashby High School.

132.     In approximately September 2020, Defendant Dunlap was charged with three felony counts of Indecent Liberties with a Juvenile in a Supervisory Capacity based upon his conduct toward Plaintiff.

133.     In approximately April of 2021, Defendant Dunlap pleaded guilty to two felony counts of Indecent Liberties with a Juvenile in a Supervisory Capacity.

134.     The felony charge of Indecent Liberties with a Juvenile in a Supervisory Capacity, Virginia Code § 18.2-370.1 states:

   a. "Any person age 18 years of age or older who…maintains a custodial or supervisory relationship over a child under the age of 18….who, with lascivious intent, knowingly and intentionally

      i. Proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child; or

      ii. Proposes to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or

      iii. Exposes his…sexual genital parts to such child; or

      iv. Proposes that any such child expose his or her sexual or genital parts to such person; or

      v. Proposes to the child that the child engage in sexual intercourse, sodomy, or fondling of sexual or genital parts with another person; or

      vi. Sexually abuses the child as defined in subdivision 6 of § 18.2-67.1 is guilty of a class 6 felony.[2]

---

[2] "Sexual abuse" is defined as an act committed with the intent to sexually molest, arouse, or gratify any person where:

   a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;

   b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts;

135.    In approximately May of 2021, Defendant Dunlap was sentenced to two (2) years of incarceration, followed by a period of probation where he can have no unsupervised contact with minors.  He was required to permanently give up his teaching license and register as a sex offender for life.

136.    Upon information and belief, in addition to Plaintiff, the criminal investigation identified two other Turner Ashby students that had been previously groomed and sexually assaulted by Defendant Dunlap.

137.    Even after Defendant Dunlap's arrest and his resignation from Turner Ashby, none of the School Defendants contacted Plaintiff to see how he is doing or offer assistance or support.

**B. Defendants School Board, Judd, and King had actual knowledge of inappropriate conduct by Turner Ashby teachers against students and inadequate training, policies, and procedures and were deliberately indifferent and reckless in their failure to take appropriate action to prevent further harm to students, including Plaintiff.**

138.    In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued "Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties," informing all U.S. schools receiving Federal financial assistance—including Rockingham County Public Schools—that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn."  The Guidance states, among other things, schools are responsible for taking prompt and

---

c.   If the complaining witness is under age 13, the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or

d.   The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

effective action to stop and prevent the recurrence of a school employee's sexual harassment of a student.

139.    In 2004, the U.S. Department of Education issued "Educator Sexual Misconduct: A synthesis of Existing Literature," a study that determined nearly 9.6% of all kindergarten through 12th grade students are subjected to sexual misconduct by a school employee.

140.    In January 2006, OCR issued a "Dear Colleague Letter" to Rockingham County Public Schools and other U.S. public schools reminding them of their obligations to prevent and remedy sexual harassment, including sexual harassment committed by school employees against students.

141.    In March 2011, the Virginia Board of Education issued "Guidelines for the Prevention of Sexual Misconduct and Abuse in Virginia Public Schools," which acknowledge that the school board, superintendent, administrators, teachers and other school board employees have a responsibility to protect students from sexual misconduct and abuse.

142.    The Virginia Board of Education Guidelines instruct that local Virginia school boards, like Defendant School Board, should provide training for school personnel and volunteers on the prevention of sexual misconduct and abuse and disseminate information about relevant division policies to employees, volunteers, students, and parents.

143.    The Virginia Board of Education Guidelines also state:

   a. "School board employees and volunteers should avoid appearances of impropriety when interacting with students."

   b. "Educators, other employees, and volunteers should be aware of behaviors often associated with inappropriate conduct that can create an appearance of impropriety, including:

      i. Conducting ongoing, private, conversations with individual students that are unrelated to school activities or the well-being of the student and that take place in locations inaccessible to others;

      ii.   Inviting a student for home visits without informing parents;

     iii.   Inviting students for social contact off school ground without the permission or knowledge of parents.

  c.   "Personal contact between adults and students must always be nonsexual, appropriate to the circumstances and unambiguous in meaning."

  d.   "Employees and volunteers should respect boundaries consistent with their roles as educators, mentors, and caregivers.  Violations of these boundaries include…"

      i.   Physical contact with a student that could be reasonably interpreted as constituting sexual harassment;

     ii.   Showing pornography to a student;

    iii.   Unnecessarily invading a student's personal privacy;

    iv.   Singling out a particular student or group of students for personal attention and friendship beyond the bounds of an appropriate educator/mentor-student relationship;

     v.   Conversation of a sexual nature with students not related to the employee's professional responsibilities; and

    vi.   A flirtatious, romantic, or sexual relationship with a student.

144.    With respect to communication between teachers and students, the Virginia Department of Education Guidelines state that the local school board policies, such as Defendant School Board's policies, "should provide guidance to educators and other school board employees on how to maintain transparency…"

145.    The Guidelines also state, "School board employees and volunteers have an obligation to report violations of the division's policies for preventing sexual misconduct to the principal or his or her designee or to the division superintendent.  This obligation is in addition to the statutory responsibility to report suspected abuse or neglect."

146.    The Guidelines instruct that "[a]ppropriate formal disciplinary action should

always follow violations of local polices when the substance of the conduct or communication in question is found to be inappropriate, flirtatious, romantic or sexual."

147.     On April 4, 2011, OCR sent a "Dear Colleague Letter" to all U.S. public schools, including Rockingham County Public Schools, that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence.   OCR reminded schools that they have an independent obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply with Title IX responsibilities, and recommended schools provide training and education to faculty, staff, employees, and students on sexual harassment and violence.

148.     In September 2012, Rockingham County Public Schools, based upon information and belief, via Defendant School Board, issued a Sexual Harassment Policy that stated it was "committed to maintaining a learning/working environment free from sexual harassment."

149.     The Sexual Harassment Policy also stated that it "shall be a violation of this policy for any…school personnel to harass a student…" and is also a violation "for any school personnel to tolerate sexual harassment."

150.     School personnel includes school board members, school employees, agents, volunteers, contracts or other persons subject to the supervision and control of the School Division.

151.     The Sexual Harassment Policy states that the School Division shall:

(1) Promptly investigate all complaints, written or verbal, of sexual harassment…

*          *          *

(3) Promptly take appropriate action to stop any harassment, and

(4) Take appropriate action against…school personnel who violates this policy and take any other action reasonably calculated to end and prevent further harassment of…students.

152.    The Sexual Harassment Policy designates the Principal as one of the people who are supposed to receive reports of harassment on behalf of the Rockingham School District and Defendant School Board.

153.    The Sexual Harassment Policy also states that "[a]ny school personnel who has notice that a student…may have been a victim of prohibited harassment shall immediately report the alleged harassment to the building principal, the lead supervisor, or to one of the compliance officers designated in this policy."

154.    The Policy also instructs that "[u]pon receipt of a report of alleged prohibited harassment, the building principal, lead supervisor, or compliance officer shall immediately authorize or undertake an investigation."

155.    If the alleged harassment may also constitute child abuse, then it must be reported to the Department of Social Service in accordance with law."

156.    Despite these policies, they were not implemented or followed by the School Defendants.

157.    Prior to Plaintiff being groomed by Defendant Dunlap, several other teachers at Turner Ashby High School had sexually assaulted students at school and had been criminally prosecuted and/or terminated from their employment.

158.    Specifically, in 2015, Turner Ashby Social Studies Teacher Michael Stover had engaged in sexual misconduct with a 16-year-old female student, which included sending nude photographs of himself to the student and receiving nude photographs of the student as well.

159.    In 2016, Stover plead guilty to an indecent act with a minor while in a supervisory position and was sentenced to five years of probation.

160.    Prior to Stover being arrested, it was common knowledge at the school that he was

inappropriately touching female students, staring at females' buttocks, was overly friendly with students and hugging them.

161.    In 2017, Turner Ashby football coach Charlie Newman was charged with misdemeanor sexual battery for allegedly sexually assaulting two female students during the school year.

162.    In 2018, Newman was found guilty of assault and battery.

163.    Instead of terminating Newman, Defendant Rockingham County School Board allowed him to retire despite his criminal, sexual acts against students.

164.    Upon information and belief, in 2018, a female teacher at Turner Ashby sexually assaulted a male student and resigned from her teaching position.

165.    On July 8, 2019, Rockingham County Commonwealth Attorney Alycia Eldridge went to the Rockingham County School Board Meeting, which was open to the public.

166.    Attorney Eldridge had been the prosecutor on both the Stover and Newman prosecutions from Turner Ashby.

167.    Attorney Eldridge, in front of the Defendant School Board and members of the public in attendance, asked the members of Defendant Rockingham County School Board if she could help them revise their policies regarding teacher assaults on students and the prevention of assaults on students.

168.    Attorney Eldridge offered to come to Turner Ashby High School and train administrators, teachers, and students about appropriate interaction, the signs of grooming and assault, and what do to if they suspect or see inappropriate interactions between a teacher and student.

169.    Defendant Rockingham County School Board declined Attorney Eldridge's request

and offer despite its actual knowledge that its training, policies and procedures were grossly inadequate.

170.     Upon information and belief, despite clear notice by the Department of Education, Office of Civil Rights, Virginia Board of Education, and Rockingham County Public Schools' own policy regarding Defendants School Board, Judd, King and John Roes 1-10's ("School Defendants") obligations to prevent and remedy sexual harassment, and notice of the dangers posed by Defendant School Board's own employees to vulnerable students, at all relevant times, the School Defendants failed to provide training and education to administrators, staff, students, and parents regarding school employee sexual assault of students.

171.     Upon information and belief, School Defendants, at all relevant times, failed to provide training or education to administrators, staff, students, and parents on protecting students from sexual assault, identifying signs of sexual assault, identifying grooming behaviors of sexual predators, interviewing victims and potential witnesses of sexual assault, investigating reports of sexual abuse and assault, remediating sexual harassment and abuse, and proper reporting of suspected sexual harassment and abuse to School Board administrators, employees, and the authorities.

172.     Upon information and belief, at all relevant times, School Defendants failed to provide training or education to administrators, staff, students, and parents on any then-existing written Rockingham County Public School policy regarding school employee sexual harassment against students.

173.     At all relevant times, School Defendants had no written policies, procedures, or guidelines for its employees regarding reporting child abuse or sexual assault of its students to authorities or a child abuse hotline.

174.    At all relevant times, School Defendants failed to provide training to administrators and staff regarding reporting suspected child abuse and student assault to authorities or a child abuse hotline.

175.    At all relevant times, School Defendants had no Title IX coordinator responsible for and/or trained in receiving, coordinating, or investigating reports of sexual harassment, assault and discrimination of students at Rockingham County Public Schools.

176.    Had School Defendants had proper training, policies, procedures or implemented and followed the policies and procedures, Plaintiff's sexual assaults, trauma, hostile educational environment and other injuries would have been prevented.

177.    The repeated sexual assaults, grooming, deliberate indifference and trauma Plaintiff suffered has caused and continues to cause serious and permanent injuries, including but not limited to:

    a.    sexual assault;

    b.    physical trauma;

    c.    psychological trauma;

    d.    sexual harassment;

    e.    assault and battery;

    f.    emotional distress;

    g.    post-traumatic stress disorder;

    h.    depression;

    i.    suicidal ideation;

    j.    anxiety;

    k.    nightmares;

l.      difficulty sleeping;

m.      flashbacks;

n.      memory loss;

o.      difficulty in romantic relationships and intimacy;

p.      difficulty with friendships;

q.      lack of trust with authority figures;

r.      lost time from school;

s.      loss of educational benefits;

t.      future lost earning capacity;

u.      embarrassment;

v.      humiliation;

w.      the need for counseling;

x.      the need for inpatient hospitalization;

y.      the need for medication;

z.      past medical treatment;

aa.     future medical treatment;

bb.     past medical expenses;

cc.     future medical expenses;

dd.     the need to move his home; and

ee.     out of pocket expenses.

IV.     CLAIMS

## COUNT I
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. 1681, *et seq.***
**Plaintiff v. Defendant School Board**

178.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

179.    Defendant School Board had actual notice of Defendant Dunlap's sexual misconduct against Plaintiff prior to the meeting that occurred between Defendant Principal Judd and Defendant Guidance Counselor King, which prompted the meeting.

180.    Defendant School Board, by its action and inaction, created an environment where criminal sexual misconduct was tolerated and encouraged repeated misconduct, which caused injuries to Plaintiff.

181.    Defendant School Board, through its agents Defendants Judd and King, along with John Roes 1-10, had actual knowledge of sexual assaults, harassment, exploitation, and discrimination that Defendant Dunlap perpetrated against Plaintiff, when Defendant Dunlap used his authority as a school employee to groom, abuse, sexually assault and harass Plaintiff.

182.    Defendants Judd and King, the individuals with actual knowledge, had the authority and ability to investigate and take meaningful corrective action to end or prevent the sexual assaults, exploitation, discrimination, hostile educational environment and harassment, but failed to do so.

183.    Defendants School Board, Judd and King were further obligated to address the sexual assault and harassment because Defendant School Board had substantial control over Defendant Dunlap, its teacher and employee, as well as the context in which the assaults and harassment were occurring, at its school Turner Ashby and within the context of the student-

teacher relationship.

184.    The sexual abuse, assault, exploitation, and discrimination that Defendant Dunlap inflicted on Plaintiff was severe, pervasive, and objectively offensive and effectively barred Plaintiff's access to educational opportunities and benefits.

185.    Plaintiff suffered repeated school employee-on-student sexual assault and harassment, which is sex discrimination prohibited by Title IX.

186.    The sexual harassment Plaintiff suffered created a hostile educational environment for Plaintiff.

187.    Defendant School Board and Rockingham County Public Schools personnel, including but not limited to Defendants Judd, King, and John Roes 1-10, had actual knowledge and the authority to take corrective action to provider, offer, recommend, or coordinate adequate psychological counseling and academic assistance and services to Plaintiff to help minimize the harm he suffered due to the discrimination and harassment, including sexual assaults, abuse, and exploitation.  However, Defendants chose not to do so.

188.    By its actions and inaction, Defendant School Board acted with deliberate indifference toward the rights of Plaintiff to a safe and secure educational environment and materially impaired Plaintiff's ability to pursue his education at Turner Ashby in violation of Title IX.

189.    Specifically, Defendant School Board violated Title IX in the following ways:

   a.  Choosing to take no action to protect Plaintiff, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent Defendant Dunlap's discrimination and harassment against Plaintiff;

   b.  Failing to conduct an investigation into Defendant Dunlap's sexual misconduct;

   c.  Allowing or being deliberately indifferent to its employee Defendant Dunlap to be alone with Plaintiff before, after, and during school hours where he groomed

and sexually assaulted Plaintiff;

d.  Allowing or being deliberately indifferent to prior reports of inappropriate conduct by Defendant Dunlap toward students;

e.  Allowing or being deliberately indifferent to prior reports and incidents of inappropriate conduct by teachers and staff toward students;

f.  Creating or being deliberately indifferent to an environment that tolerated sexual assault, sexual harassment, exploitation, abuse and other misconduct and that permitted the complete disregard and misconduct by its teachers, including but not limited to, Defendant Dunlap;

g.  Failing to provide, offer, recommend or coordinate adequate health, psychological counseling, and academic assistance and other services to Plaintiff after he was sexually assaulted and abused by Defendant Dunlap;

h.  Failing to terminate or otherwise discipline School Board members, representatives and employees for their willful disregard to Plaintiff and other students' safety and rights, or was deliberately indifferent thereto;

i.  Failing to have a designated Title IX Coordinator;

j.  Failing to advise students, parents, and school employees that there was a Title IX Coordinator that reports should be made to;

k.  Failing to train its administration, staff, and employees, including but not limited to Defendants Judd and King, on its policies pertaining to sexual harassment and assault;

l.  Failing to train its administration, staff, and employees that when a report is made to a principal, guidance counselor, or other staff or administration, that the report should be sent to the District's Title IX Coordinator;

m. Failing to implement adequate policies and procedures pertaining to sexual harassment and assault;

n.  Failing to offer reasonable accommodations following Plaintiff's sexual assaults to remediate the hostile educational environment;

o.  Failing to train or offer education to its students regarding inappropriate conduct by teachers and the students' rights, including their rights under Title IX, to report and seek redress from inappropriate conduct and harassment;

p.  Failing to timely address reports of grooming, assault, and harassment by Defendant Dunlap against Plaintiff;

     q.   Ignoring Plaintiff's notable distress and suffering after he was assaulted by Defendant Dunlap;

     r.   Forcing Plaintiff to spend the rest of the Fall 2019 and Spring 2020 semesters in close proximity to Defendant Dunlap; and

     s.   Failing to take disciplinary action against Defendant Dunlap.

190.    As a direct and proximate result of Defendants' misconduct and deliberate indifference, Plaintiff sustained and continues to sustain serious and permanent injuries for which he is entitled to compensation, including but not limited to the injuries described in paragraph 177 above and:

     a.   Past, present, and future physical and psychological pain, suffering, and impairment;

     b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.   Impaired educational capacity;

     d.   Impaired future earning capacity;

     e.   Loss of education and benefits;

     f.   Attorneys' fees and costs; and

     g.   Such other relief as this Court deems appropriate.

**COUNT II**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. §1983**
**Failure to Train**
**Plaintiff v. Defendants School Board, Judd, King, and John Roes 1-10**

191.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

192.    At all relevant times, School Defendants were policymakers and administrators, acting under color of state law, who had a duty to train, and failed to train, administrators, teachers,

staff, employees volunteers, students, and parents concerning Rockingham County Public Schools' policies on reporting known or suspected abuse of students like Plaintiff.

193.    At all relevant times, Defendants were policymakers and administrators who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents concerning school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct by School Board employees like Defendant Dunlap against Rockingham County Public School students like Plaintiff.

194.    At all relevant times, Defendants were policymakers and administrators who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents regarding any written policies that would prevent or prohibit actions like those taken by Defendant Dunlap against Plaintiff.

195.    Defendants failed to train Rockingham County Public School administrators, teachers, staff, employees, volunteers, students, and parents despite the obvious need for training on, among other things, school employee sexual misconduct against students, and identifying, investigating, reporting, and stopping inappropriate conduct like that perpetrated by Defendant Dunlap.

196.    Defendants failed to adequately prohibit or discourage readily foreseeable conduct in light of the known dangers faced by students in United States public schools, other School Board employees' sexual misconduct against students, and Defendant Dunlap's inappropriate conduct and suspected sexual assault and harassment.

197.    Defendants recklessly and with deliberate indifference continued to adhere to an approach that they knew or should have known had failed to prevent tortious, harmful conduct by School Board employees toward students.

198.    Defendants' failure to train Rockingham County Public School employees and agents effectively denied Plaintiff's clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including his right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

199.    Defendants failed to train Rockingham County Public School employees and agents in reckless and/or callous indifference to Plaintiff's federally protected rights and despite knowledge of the risks of not providing the proper training.

200.    As a direct and natural consequence of Defendants' actions, inactions, and deliberate indifference to and violation of Plaintiff's clearly established Constitutional rights, Plaintiff suffered, and continues to suffer injuries including, but not limited to, emotional distress and psychological trauma.

201.    Had Defendants offered and/or received proper training, it would have prevented Defendant Dunlap's access and ability to harm Plaintiff.

202.    As a direct and proximate result of Defendants' actions, inaction, deliberate indifference to, and violation of Plaintiff's clearly established Constitutional rights, Plaintiff sustained and continues to sustain serious and permanent injuries for which he is entitled to compensation, including those described in paragraph 177 above and:

      a.  Past, present, and future physical and psychological pain, suffering, and impairment;

      b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.  Impaired educational capacity;

      d.  Impaired earning capacity;

      e.  Loss of education and benefits;

    f.   Attorneys' fees and costs;

    g.   Punitive damages as necessary and sufficient to deter Individual Defendants Judd, King, and John Roes 1-10 from engaging in the same or similar behavior in the future; and

    h.   Such other relief as this Court deems appropriate.

**COUNT III**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**Supervisory Liability**
**Plaintiff v. Defendants Judd, King and John Roes 1-10**

203.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

204.    Plaintiff had clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including his right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

205.    Defendant Principal Judd and Defendant Guidance Counselor King, at all relevant times, were employees of Defendant School Board, acting under color of law, who had supervisory duties and responsibilities with respect to their subordinate, Defendant School Board employee, Defendant Dunlap.

206.    Defendants Judd and King had actual knowledge and/or constructive knowledge, including knowledge they would have had if they used reasonable care and diligence, that Defendant Dunlap and prior School Board Employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to students including Plaintiff, based upon, but not limited to, the following:

    a.   Defendant Dunlap openly being referred to as "Dad Dunlap," "Daddy Dunlap," "Dad," or "Wes" by students;

    b.   Defendant Dunlap and other teachers and administrators hugging students at school;

c.  Defendant Dunlap making his students aware that he was on Grindr through providing a screen shot of the class roster to students containing the Grinder app open on the screen;

d.  Defendant Dunlap having inappropriate conversations with students, including but not limited to Plaintiff, on the Remind App;

e.  Defendant Dunlap having almost daily meetings with Plaintiff in his office with the door closed;

f.  The meeting Defendant Judd held along with Defendant King confronting Defendant Dunlap and Plaintiff about a "relationship" or "something going on";

g.  Any and all prior reports leading up to the meeting referenced in paragraph (f) leading to a suspicion of inappropriate conduct by Defendant Dunlap toward Plaintiff;

h.  Any and all prior reports culminating in the meeting referenced in paragraph (f) leading to a suspicion and/or actual knowledge of inappropriate conduct by Defendant Dunlap toward Plaintiff;

i.  Reports and incidents of several prior teachers and School Board employees engaging in inappropriate conduct with students prior to Defendant Dunlap's inappropriate conduct;

j.  Failing to institute additional training, policies and procedures following Defendants' actual knowledge of at least three prior School Board employees sexually assaulting and/or engaging in inappropriate conduct toward students;

k.  Failing to institute additional training, policies and procedures following Attorney Eldridge's statements at the School Board meeting on July 8, 2019;

l.  Failing to institute additional training, policies and procedures following the three prior School Board employees' sexual assaults of and inappropriate conduct with students that would have resulted in recognizing signs and symptoms of grooming and abuse; and

m.  Failing to institute additional training, policies and procedures following the three prior School Board employees' sexual assaults of and inappropriate conduct toward students that would have resulted in an investigation and discipline of Defendant Dunlap related to his inappropriate conduct toward Plaintiff.

207.  Defendants Judd and King's response to the actual and constructive knowledge

described above was so inadequate as to show deliberate indifference to or tacit authorization of Defendant Dunlap's and other prior teachers' offensive misconduct against Plaintiff and other students.

208.    Defendants Judd and King's response to the actual and constructive knowledge described above exhibited reckless and/or callous indifference to Plaintiff's federally protected rights.

209.    Defendants Judd and King took no action to supervise, monitor, or investigate Defendant Dunlap's interactions with Plaintiff or other male students, did not monitor Defendant Dunlap's activities in the choir room or at any other location at Turner Ashby, failed to take any action to curtail Defendant Dunlap's unrestricted and unsupervised access to Plaintiff, and failed to investigate Defendant Dunlap's interactions with and toward Plaintiff.

210.    As a direct and natural consequence of Defendants Judd and King's actions, inactions, and deliberate indifference to and violation of Plaintiff's clearly established Constitutional rights, Plaintiff suffered, and continues to suffer, serious and permanent injuries including, but not limited to, emotional distress and psychological trauma.

211.    As a direct and proximate result of Defendants Judd and King's actions, inaction, deliberate indifference to, and violation of Plaintiff's clearly established Constitutional rights, Plaintiff sustained and continues to sustain serious and permanent injuries for which he is entitled to compensation, including the injuries described in paragraph 177 above and:

      a.  Past, present, and future physical and psychological pain, suffering, and impairment;

      b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.  Impaired educational capacity;

    d.   Impaired earning capacity;

    e.   Loss of education and benefits;

    f.   Attorneys' fees and costs;

    g.   Punitive damages as necessary and sufficient to deter Defendants Judd, King and John Roes 1-10 from engaging in the same or similar behavior in the future; and

    h.   Such other relief as this Court deems appropriate.

**COUNT IV**
**Gross Negligence**
**<u>Plaintiff v. Defendants School Board, Judd, King, and John Roes 1-10</u>**

212.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

213.    Defendants owed a duty to Plaintiff, its student, to keep him safe from foreseeable harm, provide proper supervision, and ensure that he had an education in an atmosphere conducive to learning, free of disruption and safe from threats of harm.

214.    It was foreseeable, based upon Defendant Dunlap's past conduct, and the inappropriate conduct of at least three other teachers in the prior four years, that there was a specific risk of teachers acting inappropriately toward and sexually assaulting and harassing students.

215.    Defendants also owed a duty to Plaintiff, upon having actual or constructive knowledge of Defendant Dunlap's inappropriate conduct toward Plaintiff, to investigate and remediate the effects of Defendant's assaults and harassment upon Plaintiff.

216.    Defendants failed to discharge their duties as a reasonable prudent person would under the circumstances.

217.    Defendants acted recklessly and outrageously and were grossly negligent in, including but not limited to, the following ways:

a.  Failing to take steps to remediate or lessen the impact of the sexual assaults and harassment on Plaintiff;

b.  Requiring Plaintiff to continue with his class schedule that involved half of his classes every day being taught by Defendant Dunlap;

c.  Continuing to allow Defendant Dunlap to lead choir and the school theater program;

d.  Continuing to allow Defendant Dunlap unsupervised access to students;

e.  Failing to inform Plaintiff's mother about the meeting and reports of Defendant Dunlap's inappropriate conduct toward Plaintiff;

f.  Failing to discipline or terminate Defendant Dunlap;

g.  Failing to implement training for administration, staff, employees, students, and parents regarding inappropriate conduct by teachers and staff;

h.  Failing to implement training or revision of policies and procedures after Attorney Eldridge offered to assist them in doing so at the July 8, 2019 School Board Meeting;

i.  Failing to implement additional safeguards following at least three prior instances of teacher and staff misconduct toward students in the prior four years;

j.  Failing to inquire into why Plaintiff was psychologically and emotionally struggling in his senior year of high school;

k.  Failing to offer any counseling, accommodations, and/or assistance after having actual knowledge of inappropriate conduct by Defendant Dunlap toward Plaintiff;

l.  Referring to the sexual assault and harassment by Defendant Dunlap toward Plaintiff as a "relationship";

m.  Placing blame on Plaintiff, a victim of sexual assault and harassment by his teacher;

n.  Treating Defendant Dunlap and Plaintiff as if they were on equal ground and not a teacher/student relationship;

o.  Failing to recognize the signs of grooming;

p.  Failing to recognize the signs of sexual assault and harassment;

q.  Allowing and encouraging an environment where sexual abuse and harassment of students could happen, did happen, and went unnoticed and/or unaddressed;

r.  Failing to follow then-existing guidance, policies, and procedures for sexual abuse prevention and remediation;

s.  Failing to properly train School Board employees in their responsibilities related to mandatory reporting;

t.  Failing to recognize the many warning signs that Plaintiff was being groomed, sexually assaulted, and harassed by Defendant Dunlap;

u.  Failing to review and investigate the many prior instances of sexual misconduct on behalf of its teachers and staff;

v.  Failing to report, investigate and intervene on Plaintiff's behalf in a timely manner or at all; and

w.  Threatening to have Plaintiff arrested and sent to a psychiatric facility.

218.    Defendants' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would foreseeably result from their conduct and caused injury to Plaintiff.

219.    Defendants grossly negligent actions and inactions caused serious and permanent injuries to Plaintiff more fully described in paragraph 177 above.

## COUNT V
### Assault
### Plaintiff v. Defendants Dunlap, School Board, and Timeless Toys, LLC

220.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

221.    Defendant Dunlap performed many acts that he intended to cause harmful and offensive contact with Plaintiff and/or apprehension of such conduct that made Plaintiff fear a reasonable apprehension of imminent battery.

222.    Defendant School Board is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

223.    Defendant Dunlap was employed by Defendant School Board as a teacher and used his employment to groom and assault Plaintiff both at Turner Ashby and other locations.

224.    Defendant Dunlap was in the course and scope of his employment with Defendant School Board when grooming, sexually assaulting and harassing Plaintiff.

225.    Defendant Dunlap misused his authority as Plaintiff's teacher to allow him to groom, sexually assault, and harass Plaintiff.

226.    Defendant Timeless Toys, LLC is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

227.    Defendant Dunlap was co-owner of Timeless Toys, LLC and used his authority as the owner to gain access to Timeless Toys while the store was closed to sexually assault Plaintiff on the premises.

228.    Defendant Dunlap also used his ownership of Timeless Toys, LLC to have inappropriate, sexual communications with Plaintiff through the Timeless Toys Instagram account and email account and was acting on behalf of Timeless Toys, LLC when doing so.

229.    As a foreseeable consequence of Defendant Dunlap's sexual assault on Plaintiff, Plaintiff was caused to suffer the serious and permanent injuries more fully described in paragraph 177 above.

**COUNT VI**
**Battery**
**Plaintiff v. Defendants Dunlap, School Board, and Timeless Toys, LLC**

230.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

231.    Defendant Dunlap engaged in many acts of unwanted and harmful, offensive touching of Plaintiff.  Plaintiff did not consent, and could not legally consent while he was under age 18, to the unwanted touching and the touching was not otherwise excused or justified.

232.    Defendant School Board is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

233.    Defendant Dunlap was employed by Defendant School Board as a teacher and used that employment to groom, assault, and batter Plaintiff both at Turner Ashby and other locations.

234.    Defendant Dunlap was in the course and scope of his employment with Defendant School Board when grooming, sexually assaulting, battering, and harassing Plaintiff.

235.    Defendant Dunlap misused his authority as Plaintiff's teacher to allow him to groom, sexually assault, batter, and harass Plaintiff.

236.    Defendant Timeless Toys, LLC is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

237.    Defendant Dunlap was co-owner of Timeless Toys, LLC and used his authority as the owner to gain access to Timeless Toys while the store was closed to sexually assault and commit battery upon Plaintiff on the premises.

238.    As a foreseeable consequence of Defendant Dunlap's sexual assault on Plaintiff, Plaintiff was caused to suffer the serious and permanent injuries more fully described in paragraph 177 above.

### COUNT VII
### Intentional Infliction of Emotional Distress
### Plaintiff v. Defendants Dunlap, School Board, and Timeless Toys, LLC

239.    Plaintiff incorporates all previous paragraphs by reference as though fully stated

here.

240.    Defendant Dunlap's conduct in grooming and repeatedly sexually assaulting Plaintiff was extreme, outrageous, and beyond all bounds of decency.

241.    Defendant Dunlap's grooming and repeatedly sexually assaulting Plaintiff was intentional and with reckless disregard for the harm it would foreseeably cause Plaintiff.

242.    Defendant Dunlap's threats to Plaintiff while he was in crisis at the hospital and following the meeting with Defendants Judd and King was intentional, extreme, outrageous, and beyond all bounds of decency and were made with reckless disregard to the harm they would foreseeably cause Plaintiff.

243.    Additionally, Defendant Dunlap endangered and breached the physical safety of Plaintiff and caused him to fear for his own physical safety.

244.    Defendant School Board is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

245.    Defendant Dunlap was employed by Defendant School Board as a teacher and used that employment to groom and assault Plaintiff both at Turner Ashby and other locations.

246.    Defendant Dunlap was in the course and scope of his employment with Defendant School Board when grooming, sexually assaulting and harassing Plaintiff.

247.    Defendant Dunlap misused his authority as Plaintiff's teacher to allow him to groom, sexually assault, batter, and harass Plaintiff.

248.    Defendant Timeless Toys, LLC is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

249.    Defendant Dunlap was co-owner of Timeless Toys, LLC and used his authority as the owner to gain access to Timeless Toys while the store was closed to sexually assault and

commit battery on Plaintiff on the premises.

250.    Defendant Dunlap's conduct caused Plaintiff severe emotional distress with physical manifestations more fully described in paragraph 177 above.

## COUNT VIII
### Negligent Infliction of Emotional Distress
### Plaintiff v. All Defendants

251.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

252.    Defendant Dunlap owed a duty to Plaintiff, a minor student under his supervision and care, to act reasonably under the circumstances.

253.    Defendant Dunlap knew or should have known that grooming and sexually assaulting Plaintiff would cause him severe harm and severe emotional distress with physical manifestations.

254.    Defendant Dunlap acted carelessly and breached his duty of care to Plaintiff.

255.    Additionally, Defendant Dunlap endangered and breached the physical safety of Plaintiff and caused him to fear for his own physical safety.

256.    Defendant School Board is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

257.    Defendant Dunlap was employed by Defendant School Board as a teacher and used that employment to groom and assault Plaintiff both at Turner Ashby and other locations.

258.    Defendant Dunlap was in the course and scope of his employment with Defendant School Board when grooming, sexually assaulting, and harassing Plaintiff.

259.    Defendant Dunlap misused his authority as Plaintiff's teacher to allow him to groom, sexually assault, batter, and harass Plaintiff.

260.    Defendant Timeless Toys, LLC is directly and vicariously liable for Defendant Dunlap's assaults against Plaintiff under the doctrine of *respondeat superior.*

261.    Defendant Dunlap was co-owner of Timeless Toys, LLC and used his authority as the owner to gain access to Timeless Toys while the store was closed to sexually assault Plaintiff on the premises and use the Timeless Toys Instagram and email accounts to engage in inappropriate conversations and solicit and exchange nude images with Plaintiff.

262.    Defendants Judd and King were grossly negligent as described in Count IV above.

263.    Defendants Judd and King knew or should have known that their gross negligence would result in severe emotional distress with physical manifestations.

264.    Defendant School Board is directly and vicariously liable for the conduct of its employees Judd and King under the doctrine of *respondeat superior*.

265.    Defendants Judd and King were, at all relevant times, within the course and scope of their employment with Defendant School Board and in furtherance of the duties and responsibilities given to them by Defendant School Board.

266.    Defendants' conduct described above caused Plaintiff severe emotional distress with physical manifestations more fully described in paragraph 177 above.

## COUNT IX
### Violation of 18 U.S.C. § 2255 Child Pornography
### Plaintiff v. Defendants Dunlap and Timeless Toys, LLC

267.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

268.    Defendant Dunlap, individually, and on behalf of Defendant Timeless Toys, LLC through the Timeless Toys Instagram account and/or Timeless Toys email, solicited, knowingly

received, and was in possession of sexually explicit content, nude images, and/or child pornography of Plaintiff, who was at all relevant times a minor under age 18, in violation of 18 U.S.C. §§ 2252 and 2252A.

269.    As a direct and proximate result of Defendants' actions, Plaintiff sustained and continues to sustain serious and permanent injuries described more fully in paragraph 177 above, for which he is entitled to compensation pursuant to 18 U.S.C. § 2255, including but not limited to:

  a.  Past, present, and future physical and psychological pain, suffering, and impairment;

  b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

  c.  Impaired earning capacity;

  d.  Attorneys' fees and costs;

  e.  Punitive damages as necessary and sufficient to deter Defendants from engaging in the same or similar behavior in the future; and

  f.  Such other relief as this Court deems appropriate

## COUNT X
## Negligence *Per Se*
## Plaintiff v. Defendant Dunlap

270.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

271.    As a result of his inappropriate conduct toward Plaintiff, Defendant Dunlap plead guilty to two felony counts of Indecent Liberties with a Juvenile in a Supervisory Capacity in violation of Virginia Code § 18.2-370.1.

272.    Plaintiff was within the class of persons that Virginia Code § 18.2-370.1 was designed to protect.

273.    The harm Plaintiff suffered was the type of harm the statute was designed to prevent.

274.    Defendant Dunlap also solicited and received nude images of Plaintiff when he was a minor under age 18 in violation of 18 U.S.C. § 2255 Child Pornography.

275.    Plaintiff was within the class of persons that 18 U.S.C. § 2255 was designed to protect and the type of harm Plaintiff suffered was the type of harm the statute was designed to prevent.

276.    Defendant Dunlap's violations of Virginia Code § 18.2-370.1 and 18 U.S.C. § 2255 makes him liable for negligence *per se.*

277.    The actions of Defendant Dunlap in violation of Virginia Code § 18.2-370.1 and 18 U.S.C. § 2255 caused Plaintiff the serious and permanent injuries described in detail in paragraph 177 above.

## COUNT XI
### Negligence
### <u>Plaintiff v. Defendants Dunlap, Timeless Toys, LLC, and John Roes 1-10</u>

278.    Plaintiff incorporates all previous paragraphs by reference as though fully stated here.

279.    Defendants owed a duty to Plaintiff to act reasonably under the circumstances.

280.    Defendant Timeless Toys, LLC is directly and vicariously liable for the conduct of its co-owner Defendant Dunlap while he was acting under the course and scope of his ownership with Timeless Toys, LLC.

281.    Defendant used his ownership of Timeless Toys, LLC to gain access to the store on a day the store was closed to sexually assault Plaintiff in the store.

282.    Defendant Dunlap also used his ownership of Timeless Toys, LLC to have

inappropriate, sexual communications with Plaintiff through the Timeless Toys Instagram account and was acting on behalf of Timeless Toys, LLC when doing so.

283.    Defendant used his ownership of Timeless Toys, LLC to solicit and exchange sexual and nude images with Plaintiff over the Timeless Toys Instagram account.

284.    Defendant Dunlap, upon information and belief, also used the Timeless Toys email account to engage in inappropriate messages and exchange of photographs of and with Plaintiff.

285.    Defendants breached their duties to Plaintiff in, including but not limited to, the following ways:

       a.   Failing to act reasonably under the circumstances;

       b.   Failing to monitor the store and who had access to the store when it was closed;

       c.   Failing to monitor the Timeless Toys Instagram account;

       d.   Failing to monitor the Timeless Toys email account;

       e.   Failing to prevent sexual assault of Plaintiff;

       f.   Failing to prevent grooming of Plaintiff;

       g.   Failing to prevent harassment of Plaintiff;

       h.   Failing to implement proper, safe boundaries with Plaintiff;

       i.   Grooming Plaintiff;

       j.   Sexually assaulting Plaintiff;

       k.   Soliciting nude images from Plaintiff; and

       l.   Engaging in communication with Plaintiff that was sexually explicit and inappropriate.

286.    Defendants' negligence as detailed above caused Plaintiff serious and permanent injuries more fully described in paragraph 177 above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Doe, prays the Court for judgment against Defendants Rockingham County School Board, Phil Judd, Sandy King, Wesley Dunlap, Timeless Toys, LLC, and John Roes 1-10, jointly and severally, for an amount of no less than $10,000,000.00 for compensatory and punitive damages, together with costs of this suit, pre- and post-judgment interest, reasonable attorneys' fees, and such other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

**FITZGERALD LITIGATION**

By:   _/s/ Andrew L. Fitzgerald,_
ANDREW FITZGERALD, ESQUIRE
VA Bar No. 48282
Dated: July 15, 2021          Attorney for Plaintiff
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101
andy@fitzgeraldlitigation.com
Phone:  (336) 793-4696
      Fax:    (336) 793-4696

**FREIWALD LAW, P.C.**

By:   _s/ Laura E. Laughlin_
AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
Attorneys for Plaintiff
1500 Walnut Street, 18th Floor
Philadelphia, PA 19102
Phone:  (215) 875-8000
Fax:    (215) 875-8575
ajf@freiwaldlaw.com
lel@freiwaldlaw.com
_Pro Hac Vice Admission Pending_