CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 21 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:21-cv-00051 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ROCKINGHAM COUNTY SCHOOL | ) | By:   Hon. Thomas T. Cullen |
| BOARD d/b/a RUSSEL COUNTY | ) |           United States District Judge |
| PUBLIC SCHOOLS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

When Plaintiff John Doe was a student at Turner Ashby High School in Bridgewater, Virginia, he says that the school's choir teacher, Wesley Dunlap, groomed, seduced, and eventually, sexually abused him. Moreover, Doe claims that officials at Turner Ashby High School were aware of the inappropriate relationship that Dunlap was cultivating, but took no legitimate steps—outside telling Doe and Dunlap at a meeting to "knock it off"—to quell, let alone prevent, Doe's abuse. Doe now sues the School Board and various individuals under Title IX of the Civil Rights Act, 42 U.S.C. § 1983, and various state- and common-law theories of recovery. The matter is before the court on motions to dismiss filed by Defendants Rockingham County School Board, Phil Judd, Sandy King, and Timeless Toys, LLC. For the reasons discussed below, the court will grant the motion to dismiss filed by Timeless Toys, LLC, and will grant in part, and deny in part, the motion to dismiss filed by the School Board, Judd, and King.

I. BACKGROUND

The facts are taken from Doe's complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2014, Defendant Rockingham County School Board ("the School Board") hired Defendant Wesley Dunlap ("Dunlap")[1] as a choir teacher for Turner Ashby High School ("Turner Ashby"). (Compl. ¶ 23 [ECF No. 1].) Along with another teacher, Dunlap also oversaw the school plays. (*Id.* ¶ 25.) At all relevant times, Defendant Phil Judd ("Judd") was the principal at Turner Ashby, and Defendant Sandy King ("King") was a guidance counselor at the school. (*Id.* ¶¶ 14, 16.)

In 2016, Plaintiff John Doe ("Doe")[2] started as a freshman at Turner Ashby and soon became involved in the choir program with Dunlap. (*Id.* ¶ 24.) Doe alleges that it was common practice at Turner Ashby for students to call teachers by nicknames, and that students called Dunlap "Wes," "Dad," "Dad Dunlap," or "Daddy Dunlap." (*Id.* ¶¶ 27–28.) Doe also alleges that school administrators—such as Judd and King—were aware that students often called teachers by their first names or nicknames, and that physical contact between teachers and students was commonplace at Turner Ashby. (*Id.* ¶¶ 28–29.) Unbeknownst to Doe, though, "Dunlap had a history of grooming male students." (*Id.* ¶ 26.)

At some point during the 2018–2019 school year—Doe's junior year—Dunlap allegedly provided all of his students with a screenshot (presumably from his phone)

---

[1] Dunlap was named as a defendant as well, but has not responded. He is currently incarcerated.

[2] Given the sensitive nature of the allegations, Doe sought leave to proceed under a pseudonym. No defendant objected to this request. After considering the factors set forth in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), the court granted Doe's motion to proceed pseudonymously. (ECF No. 29.)

containing the class roster. Also printed on the page, however, were all the applications ("apps") Dunlap had opened, which included Grindr, a location-based dating app for gay men. A student reported the event to King, who allegedly reported it to Judd. (*Id.* ¶¶ 32–34.)

Doe alleges that, during this same year, Dunlap encouraged him to come to Dunlap to discuss any issues that he was going through. Doe began to rely on Dunlap as a father figure, confiding in him regarding personal and family issues. Dunlap gave Doe "special attention, listened to him, spent time with him, and made him feel loved." (*Id.* ¶ 39.) Before, during, and after the school day, Doe could regularly be found in Dunlap's office—with the door closed. During play and choir practices, Dunlap gave Doe special attention and would often compliment his singing abilities. Doe alleges this "extra" attention was part of Dunlap's grooming pattern, and that school administrators should have recognized what was going on. (*See id.* ¶¶ 42–43.) During this time, Doe explains that he was struggling with his sexuality. (*Id.* ¶ 49.)

On April 22, 2019, Doe sent Dunlap a message through an app called Remind, confiding in him about his confusion with his own sexuality.[3] Dunlap responded that the message was "too long" for the Remind app, and gave Doe his personal email for him to send the message to instead. (*Id.* ¶¶ 49–50.) Doe emailed Dunlap, telling him that he believed he may be gay or bisexual; Dunlap responded that he wanted to talk to Doe the next day at school. (*Id.* ¶ 51.)

---

[3] Turner Ashby issued to all students and teachers a computer-based app called Remind, which enabled students to communicate with teachers. (Compl. ¶ 48.) Doe alleges that conversations that took place through the Remind app were monitored by the School Board and/or its agents. (*Id.*)

As requested, Doe went to the choir room to talk with Dunlap the next day. Doe "felt that there was no one else he could confide in about his sexuality . . . ." (*Id.* ¶ 53.) He decided to tell Dunlap both because he saw Dunlap as a father-figure and because Dunlap's grooming had isolated Doe from family and friends. (*Id.* ¶ 53.) Doe cried as he explained his feelings to Dunlap, and Dunlap responded by telling Doe that he, too, was bisexual and liked men. (*Id.* ¶ 54.) Dunlap asked Doe if he wanted a hug and Doe said "yes." (*Id.* ¶ 55.) Dunlap told Doe that he did not want anyone to see him hug a student, so he ushered Doe into the music library, a room without windows. (*Id.* ¶¶ 55–56.) Once inside the music library, Dunlap hugged, and then kissed, Doe. And throughout the rest of April and May, Dunlap would have Doe meet him in the music library, where he would kiss Doe. (*Id.* ¶ 59.) Dunlap also touched Doe's penis over his clothes in the music library. (*Id.* ¶ 60.)

In addition to being a teacher at Turner Ashby, Dunlap was part-owner of Defendant Timeless Toys, LLC, a toy store located in Harrisonburg, Virginia. (*Id.* ¶ 18.) On May 18, 2019, Dunlap was messaging Doe through the Timeless Toys Instagram account when Dunlap sent Doe a picture of his penis and asked Doe to send him a picture of his. (*Id.* ¶¶ 61–63.) Doe was 17 years old. (*Id.* ¶ 65.)

At some point during May, Dunlap asked Doe to meet him at the Timeless Toys store on a Sunday when the store was closed. Doe agreed and, when he arrived, Dunlap led him into the store through the backdoor. Dunlap told Doe to take off his shirt; Doe complied. Dunlap took off his own shirt and began touching Doe's penis and instructed Doe to touch his as well. Dunlap then had Doe perform oral sex on him, and he performed oral sex on Doe.

Dunlap also told Doe that he wanted to have sexual intercourse with him, but that they should wait until Doe turned 18. (*Id.* ¶¶ 66–72.)

In July 2019, Dunlap and Doe were messaging on Instagram and Dunlap was again using the Timeless Toys account. Presumably at Dunlap's direction,[4] Doe drove to Dunlap's house and sent him a picture of the house to show that Doe was there. Dunlap got into Doe's car and told him to drive to a nearby parking lot and park where no one could see them. Doe complied and, once they were parked, Dunlap kissed Doe, performed oral sex on Doe, and told Doe to perform oral sex on him. Dunlap then anally raped Doe in Doe's car. Doe was still 17 years old at the time of these sexual assaults. (*Id.* ¶¶ 73–80.)

After this incident, Doe claims Dunlap became "distant" towards him. Because Dunlap had groomed Doe to be isolated, Doe did not have any other support system. Doe "was ashamed of the way he was groomed, manipulated, and sexually assaulted by . . . Dunlap, which caused [Doe] to go into a deep depression." (*Id.* ¶ 83.) Additionally, as Doe entered his senior year, he claims Dunlap was "making it obvious to other students that he was avoiding" Doe. (*Id.* ¶ 84.) "With having no one to turn to and feeling overwhelmed about what [Dunlap] had done to him and forced him to do, [Doe] attempted suicide just prior to Thanksgiving in November 2019." (*Id.* ¶ 85.) While Doe was in the hospital, Dunlap came to visit him and "threatened" him, telling him not to tell anyone what happened between the two of them. (*Id.* ¶¶ 88–89.) Before he left, Dunlap made Doe promise not to tell anyone. (*Id.* ¶ 90.)

After he was released from the hospital, Doe returned to classes at Turner Ashby in November 2019. Shortly after he returned, Doe alleges that he and Dunlap "were pulled into

---

[4] Doe's complaint does not connect the messages and Doe's actions.

- 5 -

a meeting" with Judd and King. (*Id.* ¶ 93.) Doe alleges that, during that meeting, Judd and King told them, "[I]f there's something or a relationship going on between you two, you better knock it off." (*Id.* ¶ 94.)

Following the meeting with Judd and King, Dunlap asked Doe to meet him in the choir room. Doe did and, once they were alone, Dunlap started crying, saying he was afraid he was going to lose his job. Again, Dunlap implored Doe not to tell anyone what he had done, and advised Doe that they needed to stop speaking to each other at school "because the school is catching on." (*Id.* ¶ 107.)

Doe "was devastated because . . . Dunlap was the only person he felt he could go to." (*Id.* ¶ 108.) In the following weeks and months, Doe "severely struggled psychologically and emotionally." (*Id.* ¶ 109.) During this time, neither the School Board, Judd, nor King took any steps to address Doe's issues. In fact, during his senior year, Doe had three classes with Dunlap. (*Id.* ¶ 111.)

During Doe's senior year, King met with Doe several times a week, and Doe "explained to her that he was struggling psychologically, emotionally, and academically." (*Id.* ¶ 113.) King explained to Doe that he could not go to Dunlap about the issues he was having, but should come to her instead. (*Id.* ¶ 114.) Doe's mother called several times and even came to the school to meet with Judd and King to express her concerns about Doe's wellbeing. King "warned" Doe's mother that if Doe "showed signs of suicidal ideation, she would call the police and have him taken back to the psychiatric ward." (*Id.* ¶ 117.) This "threat" caused great anxiety for Doe, as he feared being "arrested" in front of his classmates and being returned to the

psychiatric ward (where, he says, he was traumatized by group sessions "where other patients spoke in detail about their trauma and self-harming behaviors"). (*Id.* ¶¶ 118–19.)

From December 2019 through March 2020, Doe alleges he "suffered from severe anxiety and memory issues on a daily basis." (*Id.* ¶ 120.) "At one point during the Spring 2020 semester, [Doe] was found by . . . Dunlap laying on the floor in the fetal position in the choir hallway at Turner Ashby." (*Id.* ¶ 121.)

Because Doe was still involved in choir and school plays, he interacted with Dunlap on a daily basis. Deason—who, along with Dunlap, oversaw the school plays—"recognized that [Doe] was dazed and struggling psychologically at theatre practice" and told Judd and King about it, but they did not take any action. (*Id.* ¶ 123.) Shortly thereafter, in March 2020, school was moved to a virtual format because of the COVID-19 pandemic. (*Id.* ¶ 124.)

Doe graduated from Turner Ashby on June 6, 2020. "Mere hours after" Doe graduated, Dunlap sent Doe a message asking him to participate in a "threesome" with Dunlap and another student from a neighboring high school. (*Id.* ¶¶ 125–27.) After receiving this message, Doe says he began contemplating suicide again. (*Id.* ¶ 128.)

Doe also sought psychological therapy after he graduated, and he confided in his therapist that Dunlap had raped him. Doe's therapist contacted the appropriate authorities, and the Rockingham County Sheriff's Office opened an investigation. Dunlap resigned from Turner Ashby in the summer of 2020 and, in September, he was indicted on three felony counts of indecent liberties with a juvenile by an individual in a supervisory capacity, based on his behavior toward Doe. (*Id.* ¶¶ 131–32.) Dunlap pled guilty to two of the three felony counts in April of 2021, and was sentenced to prison. (*Id.* ¶ 133.)

As it relates to the School Board, Doe alleges that the School Board issued a sexual harassment policy in September 2012 that was in effect while Doe was a student at Turner Ashby. (*Id.* ¶ 148.) Among other things, the policy states that, "[A]ny school personnel who has notice that a student . . . may have been a victim of prohibited harassment shall immediately report the alleged harassment to the building principal, the lead supervisor, or to one of the compliance officers designated in [the] policy." (*Id.* ¶ 153.) Additionally, the policy provides that, "[i]f the alleged harassment may also constitute child abuse, then it must be reported to the Department of Social Service in accordance with law." (*Id.* ¶ 155.) Doe alleges these policies were not followed at Turner Ashby. (*Id.* ¶ 156.)

For example, Doe alleges that, prior to Dunlap's abuse of him, several other teachers at Turner Ashby sexually abused students. Specifically, in 2015, a teacher and a 16-year-old female student exchanged nude photos of themselves. (*Id.* ¶ 158.) In 2017, a Turner Ashby football coach was charged with misdemeanor sexual battery for sexually assaulting two female students. (*Id.* ¶ 161.) And in 2018, a female teacher at Turner Ashby sexually assaulted a male student and resigned from her position. (*Id.* ¶ 164.)

On July 15, 2021, Doe filed suit in this court against the School Board, Judd, King, Dunlap, Timeless Toys, and John Roes 1–10, alleging 11 separate causes of action.[5] On August

---

[5] Doe alleges the following causes of action: Count 1—violation of Title IX, against the School Board; Count 2—42 U.S.C. § 1983 failure to train, against the School Board, Judd (in both his official and individual capacities), King (in both her official and individual capacities), and John Roes 1–10; Count 3—42 U.S.C. § 1983 supervisory liability, against Judd (in both his official and individual capacities), King (in both her official and individual capacities), and John Roes 1–10; Count 4—gross negligence, against the School Board, Judd (in both his official and individual capacities), King (in both her official and individual capacities), and John Roes 1–10; Count 5—assault, against Dunlap, the School Board, and Timeless Toys; Count 6—battery, against Dunlap, the School Board, and Timeless Toys; Count 7—intentional infliction of emotional distress, against Dunlap, the School Board, and Timeless Toys; Count 8—negligent infliction of emotional distress, against the School Board, Judd (in both his official and individual capacities), King (in both her official and individual capacities), Dunlap, Timeless Toys, and John Roes 1–10; Count 9—18 U.S.C. § 2255 child pornography, against Dunlap

25, Timeless Toys filed a motion to dismiss all claims against it. (ECF No. 25.) The School Board, Judd, and King filed a partial motion to dismiss on August 27. (ECF No. 27.) The court held oral argument on both motions on November 30. At oral argument, Doe conceded that most of the claims challenged by the School Board, Judd, and King were appropriate for dismissal. All that remains for the court to rule on, then, are the School Board's challenge to Count 1 (violation of Title IX) and Timeless Toys's challenges to all claims asserted against it: Counts 5 (common law assault), 6 (common law battery), 7 (intentional infliction of emotional distress), 8 (negligent infliction of emotional distress), 9 (violation of 18 U.S.C. § 2255), and 11 (common law negligence).

## II.  STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not

---

and Timeless Toys; Count 10—negligence *per se*, against Dunlap; and Count 11—negligence, against Dunlap, Timeless Toys, and John Roes 1–10. (*See generally* Compl. ¶¶ 178–286.)

do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III. DISCUSSION

*A. Concessions*

At oral argument on the motions to dismiss (and in follow-up communications with defense counsel and the court), Doe conceded that certain claims against the School Board, Judd, and King should be dismissed. Accordingly, the following claims will be dismissed without prejudice, based on Doe's concessions: Count 2 (42 U.S.C. § 1983 failure to train) against Judd and King in their official capacities; Count 3 (42 U.S.C. § 1983 supervisory liability) against Judd and King in their official capacities; Count 4 (gross negligence) against the School Board; Count 5 (assault) against the School Board; Count 6 (battery) against the School Board; Count 7 (intentional infliction of emotional distress) against the School Board; and Count 8 (negligent infliction of emotional distress) against the School Board and against Judd and King in both their official and individual capacities.

*B. Timeless Toys*

In its motion to dismiss, Timeless Toys argues that there is an insufficient nexus between it and Dunlap's personal actions to establish its liability under the theory of *respondeat superior*. The court agrees and will grant the motion to dismiss all claims against Timeless Toys.

In Virginia, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018). "[A]n act is within the scope of the employment if (1) it was expressly or

impliedly directed by the employer, or is naturally incident to the business[;] and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest." *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987); *see e.g.*, *Brittingham v. United States*, 972 F. Supp. 1014, 1018 (E.D. Va. 1997) (holding that, because employee discipline is within the ordinary course of the business and the employer's supervisory role, a supervisor's alleged battery of an employee was within the scope of his duties); *Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426, 429 (Va. 2000) (finding that an employee committed a tortious act within the scope of his employment when he assaulted the plaintiff during a sales transaction).

In cases where courts have held employers vicariously liable, "the [employee's] tortious act . . . occurred *while* the employee was in fact performing a *specific job-related service* for the employer, and, but for the employee's wrongdoing, the service would otherwise have been within the authorized scope of his employment." *Parker v. Carilion Clinic*, 819 S.E.2d 809, 820 (Va. 2018) (emphases in original). In contrast, *respondeat superior* liability does not apply in cases involving an employee's "purely personal acts . . . not within the scope of employment," arising "wholly from some external, independent, and personal motive [of the employee]." *Id.* at 820–21 (citations omitted). *See e.g.*, *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 714 (E.D. Va. 2004) (holding supervisor's acts were not within the scope of his employment because he "was not engaged in his workplace duties or functions when he asked [his employee] on a date, attempted to kiss her, and touched her inappropriately"), *aff'd* 126 F. App'x 106 (4th Cir. 2005) (per curiam); *Nixon v. Kysela Pere Et Fils, Ltd.*, No. 5:21cv00011, 2021 WL 3700253, at *4 (W.D. Va. Aug. 19, 2021) (holding that an employee had failed to state a claim against the business

owner's company where the owner plied the employee with pills and threatened her continued employment to pressure her to remain in a sexual relationship with him).

In the present case, Doe alleges (1) that Dunlap used the Timeless Toys Instagram account to message Doe, send him nude pictures, and solicit nude pictures of him; and (2) that Dunlap forced Doe to perform oral sex on him and be subjected to oral sex from him at the Timeless Toys store when it was closed. Neither of these were naturally incident to Timeless Toys's business, nor were they to further Timeless Toys's interests. *See Kensington Assocs.*, 362 S.E.2d at 901. Rather, these actions were plainly "purely personal acts . . . not within the scope of [Dunlap's] employment," arising "wholly from some external, independent, and personal motive" of Dunlap's. *Parker*, 819 S.E.2d at 820–21.

Taking the two allegations separately, there are no factual allegations to connect Dunlap's use of the Timeless Toys Instagram account to his employment. There is no allegation that he was responsible for managing Timeless Toys's social media presence or that he was responsible for monitoring Instagram on behalf of the business. Accordingly, there is no allegation that Dunlap's wrongful conduct occurred "*while* the employee was performing a *specific job-related service* for the employer," or that, had Dunlap not used Timeless Toys's Instagram account in this wrongful way, his use of Instagram "would otherwise have been within the authorized scope of [his] employment." *Id.* at 820. Because there is no allegation that Dunlap messaged Doe when he was "*actively engaged* in a job-related service," *id.*, there is no basis to impute liability onto Timeless Toys for Dunlap's wrongful conduct.

The same is true for the sexual assault that occurred at the Timeless Toys store. Doe alleges that the store was closed that the time of the assault, and he does not allege that Dunlap

was otherwise performing *any* business-related service for Timeless Toys. Unlike the nursing home employee in *Our Lady of the Peace, Inc. v. Morgan*, 832 S.E.2d 15 (2019), whose job it was to undress and bathe residents and then raped someone while on the job, there is no allegation to suggest that Dunlap was engaged in any activity to further Timeless Toys's business interests. Moreover, Dunlap's actions were antithetical to Timeless Toys's interests, and his actions were a "marked and unusual" "deviation from the employer's business," *Parker*, 819 S.E.2d at 822, which leads to the conclusion that Dunlap's actions were not within the scope of his employment. For these reasons, Doe's allegations are insufficient to state a claim against Timeless Toys, and the court will grant its motion to dismiss.

C.  *The School Board*

As noted above, Doe has stipulated that most of the challenged counts against the School Board, Judd, and King were insufficiently pleaded or simply not cognizable under the applicable law. The only remaining, disputed count is the Title IX claim against the School Board. For the reasons discussed below, the court is persuaded that this claim is plausibly alleged. The court will deny the School Board's motion to dismiss as to Count 1.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a).

> To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) [he] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment

> in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

*Jennings v. Univ. of. N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). Title IX's remedial scheme is "predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989) (citing 20 U.S.C. § 1682). An "appropriate person" is "an official of the [federal-funding] recipient entity with authority to take corrective action to end the discrimination." *Id.* Accordingly, a "school district is not liable for damages based on sexual harassment of a student by a teacher 'unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'" *Doe by Watson v. Russell Cnty. Sch. Bd.*, No. 1:16CV00045, 2017 WL 1374279, at *5 (W.D. Va. Apr. 13, 2017) (quoting *Gebser*, 524 U.S. at 277).

Actual knowledge is required to make a case under Title IX; "constructive notice or *respondeat superior* principles [are not sufficient] to permit recovery under Title IX." *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3rd Cir. 2005) (citing *Gebser*, 524 U.S. at 285–90). In *Gebser*, the Supreme Court

> declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or *should have known*. Rather, [the Supreme Court] concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment *of which it had actual knowledge.*

*Davis v. Monroe Cnty. Sch. Bd.*, 526 U.S. 629, 642 (1999) (second emphasis added). "An educational institution has 'actual knowledge' if it knows the underlying facts, indicating

sufficiently substantial danger to students, and was therefore aware of the danger." *Bostic*, 418 F.3d at 361.

The School Board does not contest that Doe has made sufficient allegations as to the first three prongs of the *prima facie* case; rather, it makes two related arguments. First, the School Board contends that, because Doe pleaded "upon information and belief" that Judd and King told Dunlap to "knock off" whatever was going on, he has not alleged sufficient facts to show that a meeting ever took place. (*See* Defs.' Mem. in Supp. Mot. to Dismiss pg. 12, Aug. 27, 2021 [ECF No. 28].) The School Board also argues that Doe fails to allege that Judd and King "were on actual notice of 'sexual harassment' of John Doe by Dunlap." (*Id.* at 13.)

The court is not persuaded by the first argument, which misrepresents Doe's pleading. The crux of the issue is whether Doe has plausibly alleged that Judd or King had actual notice of Dunlap's misconduct. Doe alleges: "Upon information and belief, upon Plaintiff's return to school, Plaintiff and Defendant Dunlap were pulled into a meeting at Turner Ashby with Defendant Principal Judd and Defendant King." (Compl. ¶ 93.) He also explicitly alleges: "Defendant Judd and Defendant King told Defendant Dunlap and Plaintiff, 'if there's something or a relationship going on between you two, you better knock it off.'" (*Id.* ¶ 94.) Doe's complaint does not allege "upon information and belief" that this conversation took place; he alleges it *directly*.[6]

---

[6] Doe cannot know how or why Dunlap was brought into the meeting, so it makes sense to allege that he was pulled into the meeting "upon information and belief." The same is true for the exact date, as it occurred after Doe's suicide attempt and Doe may not be able to pinpoint if it occurred in late November or early December. Thanksgiving was on November 28, 2019, making a return to school after Thanksgiving no sooner than December 1.

The second argument is also unavailing. Here, Doe alleges that Judd and King's statement regarding "*something* or a relationship going on between you two" represented, at a minimum, actual knowledge of Dunlap's harassment of Doe (even if it was not notice of the abuse and rape) (*see id.* ¶ 95)—an allegation that is accepted as true at this stage. Doe need not allege that an "appropriate person" was aware of all of Dunlap's wrongful acts, only that he or she had "actual knowledge of discrimination . . . ." *Gebser*, 524 U.S. at 290. This interpretation is buttressed by Doe's allegation that King told Doe he should come to *her*—and *not* Dunlap—if he had any issues. (*See id.* ¶ 114.)  And the conversation's timing, immediately after Doe's return to school having recovered from a suicide attempt, supports a plausible allegation of actual knowledge.

At oral argument, the School Board argued that the "relationship" Judd and King referred to was the "father-figure" relationship, not an improper one. But at this stage, all reasonable inferences are to be taken in Doe's favor. The School Board's argument would ignore this generous standard of review. Moreover, the *only* reasonable interpretation of Judd and King's statement is a reference to an illicit and improper relationship. Judd and King's admonition is a sufficient allegation at this stage to establish actual knowledge of a violation of Title IX. The School Board's motion to dismiss Doe's Title IX claim will be denied.

### IV.    CONCLUSION

For the foregoing reasons, Timeless Toys's motion to dismiss will be granted and the motion to dismiss filed by the School Board, Judd, and King will be granted in part and denied in part. Doe will be permitted to file an amended complaint within 14 days, if he so chooses.

The second argument is also unavailing. Here, Doe alleges that Judd and King's statement regarding "*something* or a relationship going on between you two" represented, at a minimum, actual knowledge of Dunlap's harassment of Doe (even if it was not notice of the abuse and rape) (*see id.* ¶ 95)—an allegation that is accepted as true at this stage. Doe need not allege that an "appropriate person" was aware of all of Dunlap's wrongful acts, only that he or she had "actual knowledge of discrimination . . . ." *Gebser*, 524 U.S. at 290. This interpretation is buttressed by Doe's allegation that King told Doe he should come to *her*—and *not* Dunlap—if he had any issues. (*See id.* ¶ 114.)  And the conversation's timing, immediately after Doe's return to school having recovered from a suicide attempt, supports a plausible allegation of actual knowledge.

At oral argument, the School Board argued that the "relationship" Judd and King referred to was the "father-figure" relationship, not an improper one. But at this stage, all reasonable inferences are to be taken in Doe's favor. The School Board's argument would ignore this generous standard of review. Moreover, the *only* reasonable interpretation of Judd and King's statement is a reference to an illicit and improper relationship. Judd and King's admonition is a sufficient allegation at this stage to establish actual knowledge of a violation of Title IX. The School Board's motion to dismiss Doe's Title IX claim will be denied.

### IV.    CONCLUSION

For the foregoing reasons, Timeless Toys's motion to dismiss will be granted and the motion to dismiss filed by the School Board, Judd, and King will be granted in part and denied in part. Doe will be permitted to file an amended complaint within 14 days, if he so chooses.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 21st day of January, 2022.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE